Filed 9/11/14  P. v. Kirk CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>LYNWOOD ALLAN KIRK,<br><br>Defendant and Appellant. | A138871<br><br>(San Mateo County<br>Super. Ct. No. SC065808A) |

**INTRODUCTION**

Lynwood Allan Kirk appeals his conviction, following a no contest plea, of kidnapping (Pen. Code, § 207, subd. (a))[1] and infliction of corporeal injury on a cohabitant (§ 273.5, subd. (a)).  He maintains the trial court erred by not thoroughly inquiring about and subsequently denying his *Faretta*[2] motion, failing to conduct a thorough *Marsden*[3] motion, and denying his motion for continuance.[4]  We conclude none of these claims have merit, and affirm the judgment.

---

[1]  All further statutory references are to the Penal Code.

[2]  *Faretta v. California* (1975) 422 U.S. 808 (*Faretta*).

[3]  *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).

[4]  Defendant also maintained in his opening brief he was entitled to additional custody credits.  In his reply brief, he acknowledged "[h]aving obtained the relief sought in the Opening Brief" after filing a section 1237.1 motion in the trial court, and therefore "[withdrew] this claim" even though he "[was] not and has never been in agreement with the credits."

1

## PROCEDURAL AND FACTUAL BACKGROUND

We set forth only those facts pertinent to the issues raised on appeal. The San Mateo County District Attorney charged defendant with seven counts arising from incidents in November 2007: kidnapping (§ 207, subd. (a)), infliction of corporal injury on a cohabitant (§ 273.5, subd. (a)), false imprisonment (§ 236), two counts of violation of a court order (§ 136.2), attempting to dissuade a witness (§ 136.1, subd. (b)(2)), and resisting arrest (§ 148, subd. (a)(1)). The amended information alleged the kidnapping and dissuading a witness counts were considered serious felonies (§ 1192.7, subd. (c)(20) & (37)), and defendant had a prior conviction of infliction of corporal injury on a cohabitant (§ 273.5, subd. (a)), a prior strike conviction (§§ 1170.12, subd. (c)(1), 667, subd. (a)) and had served a prior prison term (§ 667.5, subd. (b).).

At defendant's request, the trial court continued his jury trial five times. Trial was set for August 30, 2010, but defendant failed to appear and the trial court issued a bench warrant. After defendant appeared, the trial court granted his sixth continuance, until July 11, 2011.

On the new trial date, defendant moved for a seventh continuance because he wanted to make a *Marsden* motion. The trial court continued the trial until the afternoon to hold a *Marsden* hearing. The court subsequently denied the motion and request for yet a further continuance to hire a new attorney. Defendant failed to appear the next day for trial, and the trial court issued another bench warrant.

Eight months later, it was determined defendant was in custody at the San Francisco county jail, and the trial court ordered him transferred to San Mateo, and set trial for April 30, 2012. Defense counsel then declared a doubt as to defendant's competence under sections 1367 and 1368. About three months later, the trial court found defendant competent, and reset trial for November 5, 2012.

A few weeks before the new trial date, defendant moved for an eighth continuance, again claiming he wanted to hire a new attorney. By this time, defendant was being represented by his fourth attorney. On October 23, 2012, the trial court denied the motion to continue the trial date, but set a *Marsden* hearing for the following day.

At the outset of the October 24 *Marsden* hearing, defendant made a *Faretta* request. After the trial court explained the perils of self-representation to defendant, defendant indicated he wanted to "go pro per and then set another pretrial conference for say in March [2013]." The trial court explained defendant was "not going to have a pretrial conference whether you represent yourself or not. There's been a pretrial conference. . . . You have a trial date coming up in a very short period of time, and it appears to me that you're simply trying to get a continuance that you couldn't get yesterday by suddenly going pro per." Defendant did not disagree, but reiterated that he "want[ed] to have a pretrial conference." The trial court denied the *Faretta* motion.

The trial court then addressed the *Marsden* motion. Defendant stated he felt his current attorney was "not trying to get [him] a better deal." Defense counsel stated he met with the district attorney to try to negotiate a better deal, but the prosecution would not modify its offer. The trial court denied the *Marsden* motion.

On November 5, 2012, pursuant a negotiated disposition, defendant pleaded no contest to kidnapping and infliction of corporal injury on a cohabitant on the conditions his sentence would not exceed 13 years in prison and the trial court would consider his *Romero*[5] motion. He admitted the serious felony allegations regarding the kidnapping count, the prior strike conviction, and the prior prison term allegations.

At the April 16, 2013 sentencing hearing, defendant requested a continuance to confer with different counsel about withdrawing his plea. The trial court stated "it appears to me that based on the entirety of the record, that this is nothing more than [defendant's] attempt to further delay the proceedings" and denied the continuance. The trial court also denied defendant's *Romero* motion, denied probation, and sentenced defendant to a total of 13 years in state prison.

---

[5] *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.

DISCUSSION

***Faretta* motion**

Defendant claims the trial court erred by "failing to thoroughly inquire about and grant" his request to represent himself. " 'In determining on appeal whether the defendant invoked the right to self-representation, we examine the entire record de novo.' " (*People v. Stanley* (2006) 39 Cal.4th 913, 932 (*Stanley*).)

"Criminal defendants have the right both to be represented by counsel at all critical stages of the prosecution and the right, based on the Sixth Amendment as interpreted in *Faretta* . . . , to represent themselves." (*People v. Lewis and Oliver* (2006) 39 Cal.4th 970, 1001.) This right of self-representation, however, is not absolute. " ' " '[T]he right of self-representation is waived unless defendants articulately and unmistakably demand to proceed *pro se*.' " . . . "[T]he court should draw every reasonable inference against waiver of the right to counsel." ' " (*Stanley, supra,* 39 Cal.4th at p. 932.)

" 'A trial court must grant a defendant's request for self-representation if three conditions are met. First, the defendant must be mentally competent, and must make [the] request knowingly and intelligently, having been apprised of the dangers of self-representation.' " (*People v. Stanley, supra,* 39 Cal.4th at pp. 931–932.) The "trial court must make the defendant 'aware of the dangers and disadvantages of self-representation, so that the record will establish that "[defendant] knows what he [or she] is doing and his [or her] choice is made with eyes open." ' [Citation.]" (*People v. Dent* (2003) 30 Cal.4th 213, 217–218.)

Second, the defendant's request for self-representation must be unequivocal. (*People v. Stanley, supra*, 39 Cal.4th 932.) The "right of self-representation is not a license to abuse the dignity of the courtroom or disrupt the proceedings." (*People v. Lewis and Oliver*, *supra*, 39 Cal.4th at p. 1002.) "Equivocation of the right of self-representation may occur where the defendant tries to manipulate the proceedings by switching between requests for counsel and for self-representation, or where such actions are the product of whim or frustration." (*Ibid.*) "A motion for self-representation made

4

in passing anger or frustration, an ambivalent motion, or one made for the purpose of delay or to frustrate the orderly administration of justice may be denied." (*People v. Marshall* (1997) 15 Cal.4th 1, 23.) " '[T]he *Faretta* right is forfeited unless the defendant " 'articulately and unmistakably' " demands to proceed in propria persona.' [Citation.]" (*People v. Williams* (2013) 58 Cal.4th 197, 254.) " 'The court may deny a request for self-representation that . . . is intended to delay or disrupt the proceedings.' " (*Id.* at p. 253.)

Third, the defendant's request for self-representation must be timely. (*People v. Stanley, supra*, 39 Cal.4th 932.) The defendant should make a *Faretta* request " 'within a reasonable time prior to the commencement of trial.' [Citation.]" (*People v. Burton* (1989) 48 Cal.3d 843, 852.) The trial court then considers the totality of the circumstances in determining whether a pretrial *Faretta* request is timely. (*People v. Lynch* (2010) 50 Cal.4th 693, 724, abrogated on another ground by *People v. McKinnon* (2011) 52 Cal.4th 610, 636–645.) The trial court may also consider the following factors in determining timeliness: "whether trial counsel is ready to proceed to trial, the number of witnesses and the reluctance or availability of crucial trial witnesses, the complexity of the case, any ongoing pretrial proceedings, and whether the defendant had earlier opportunities to assert his right of self-representation." (*Id.* at p. 726.) Ultimately, the erroneous denial of a timely and unequivocal *Faretta* request is reversible per se. (*People v. Joseph* (1983) 34 Cal.3d 936, 948.)

Defendant's claim of *Faretta* error founders on the requirement that his request be unequivocal and not for purposes of delay. The trial court found the request was dilatory and an attempt to manipulate the proceedings, stating: "In my humble opinion you are seeking your pro per status to gain a continuance that you couldn't get yesterday." The record reflected defendant's history of seeking continuances and changing counsel. He made his *Faretta* request 12 days before the trial date, after multiple continuances granted over a four-and-a-half-year period. Additionally, defendant was being represented by his fourth attorney by that time. In his *Faretta* request and *Marsden* motion, defendant was seeking another five-month continuance and another pretrial conference. Given

defendant's history, the trial court could properly conclude defendant was attempting "to manipulate the proceedings." (*People v. Lewis and Oliver*, *supra*, 39 Cal.4th at pp. 1001–1002.)

Defendant also claims the trial court failed to "thoroughly inquire" about his *Faretta* request and "merely cho[se] to lecture [him]," citing *People v. Silfa* (2001) 88 Cal.App.4th 1311. In *Silfa*, the trial court provided the defendant with a "multipage questionnaire routinely given to defendants in Los Angeles County who wish to represent themselves," and questioned the defendant about his understanding of the rights he was giving up. (*Id*. at pp. 1314–1321.) Yet, the *Silfa* holding did not require trial courts to extensively question or provide multipage questionnaires to defendants seeking pro. per. status. Instead, the court noted the "Superior Court form must be seen as no more than a means by which the judge and the defendant seeking self-representation may have a meaningful dialogue concerning the dangers and responsibilities of self-representation. It is not . . . a test the defendant must pass in order to achieve self-representation." (*Id*. at p. 1322.) The court explained the defendant " ' "should be made aware of the dangers and disadvantages of self-representation," ' " and noted "[t]he trial court advised him several times he was making a mistake. That is all *Faretta* requires." (*Ibid*.)

Defendant fails to identify any requirement missing from the trial court's inquiry. In fact, the record shows a meaningful dialogue concerning the dangers and responsibilities of self-representation. The trial court told defendant of the disadvantages and dangers of self-representation in a complex case, particularly with selecting a jury and obtaining a favorable resolution. The trial court did not err in the scope of its *Faretta* inquiry of defendant.

## *Marsden* **Motion**

Defendant also claims the trial court abused its discretion by failing to conduct a "thorough" *Marsden* hearing on October 24, 2012 and again at his April 16, 2013

sentencing hearing.[6]  We review the trial court's ruling on a *Marsden* motion for abuse of discretion.  (*People v. Taylor* (2010) 48 Cal.4th 574, 599.)

A defendant has a right to request new court-appointed counsel when his or her current attorney has provided ineffective assistance.  (*Marsden, supra*, 2 Cal.3d at pp. 120, 123.)  When a defendant makes a *Marsden* motion, the court must give him or her the opportunity to demonstrate an "irreconcilable conflict [such] that ineffective representation is likely to result."  (*People v. Smith* (2003) 30 Cal.4th 581, 604.)  Once the defendant has had the opportunity to discuss the reasons for a new attorney, the trial court has the discretion to deny it, "unless defendant has made a substantial showing that failure to order substitution is likely to result in constitutionally inadequate representation."  (*People v. Crandell* (1988) 46 Cal.3d 833, 859, abrogated on another ground by *People v. Crayton* (2002) 28 Cal.4th 346, 364–365.)

A defendant's guilty plea, however, precludes him or her from raising a preplea *Marsden* claim.  (*People v. Lovings* (2004) 118 Cal.App.4th 1305, 1311 (*Lovings*).)  In *Lovings*, the defendant pleaded no contest to first degree murder, but later appealed the trial court's denial of his preplea *Marsden* motions.  (*Lovings*, at p. 1307.)  The court, citing *People v. Lobaugh* (1987) 188 Cal.App.3d 780, concluded the defendant's plea foreclosed any challenges to his preplea *Marsden* motions absent assertions his plea was "unintelligent or involuntary " or "that he received inappropriate legal advice concerning his plea."  (*Lovings*, at 1311.)  Defendant acknowledges the holding in *Lovings*, but maintains his preplea *Marsden* claim is "linked to the post-plea motion to withdraw his plea."  Defendant thus contends he can still raise a claim regarding the thoroughness of the preplea *Marsden* hearing.  Defendant fails to cite any authority, however, in support of this assertion.  Furthermore, he never made a *Marsden* motion or sought to withdraw his plea at the sentencing hearing.  Instead, he moved for a continuance to explore "the idea of a motion to withdraw the plea."  Defendant has thus waived any error in the *Marsden* proceedings.

---

[6]  This was defendant's second *Marsden* hearing.  Defendant made a *Marsden* motion regarding a different attorney in July 2011.  The court denied the motion.

Assuming arguendo defendant could raise a preplea *Marsden* claim, the record shows, in any event, the trial court provided sufficient opportunity to explain the basis for his *Marsden* motion. The court asked defendant to explain why he wanted a new attorney. It listened and responded to his complaints. It also asked if the underlying reason for changing counsel was defendant's dissatisfaction in failing to get a better sentence. Defendant confirmed it was. In response, defense counsel indicated he tried to get a better deal, but the district attorney would not offer one. In sum, the record shows the trial court provided an opportunity to pause, reflect, and inquire about any constitutionally inadequate representation.

**Denial of continuance**

Defendant additionally claims the trial court abused its discretion by denying his request for continuance, made at his sentencing hearing, so he could confer with different counsel about withdrawing his plea. We review the denial of a motion for continuance for abuse of discretion. (*People v. Mungia* (2008) 44 Cal.4th 1101, 1118.)

A party moving for a continuance must show good cause. (§1050, subd. (e).) When determining whether there is good cause, "the court shall consider the general convenience and prior commitments of all witnesses," but "convenience of the parties . . . in and of itself" is not good cause. (§ 1050, subds. (e), (g)(1).)

A trial court does not abuse its discretion when a case has been pending for an extended period of time, the court has already granted numerous and lengthy continuances at the defendant's request, and the defendant has had the reasonable opportunity to prepare the defense. (*People v. Snow* (2003) 30 Cal.4th 43, 73.) In *Snow,* the defendant claimed the trial court's denial of his continuances deprived him of effective assistance of counsel. (*Id.* at p. 70.) But the trial court had granted many of the defendant's previous requests for continuances. (*Id.* at p. 73.) By that time, the case had been pending in trial court for 26 months. (*Ibid.*) Furthermore, defense counsel, though recently reappointed to represent the defendant, had two years to prepare the defense. (*Ibid.*) The *Snow* court thus concluded the denial of the continuances were proper. (*Ibid.*)

8

Here, defendant pleaded no contest five months before seeking a continuance at his sentencing hearing. By the time of that hearing, the case had been pending for nearly five years, and the trial court had granted seven of defendant's nine previous continuance requests. The trial court, in denying the motion, stated: "The defendant plead November 5. He's been pending sentence since then. It's been continued from November 5 to March 6 to today. Actually, to April 2 to today April 16. And the defendant has been through various . . . motions to continue, various lawyers, requests to go pro per, *Marsden* motions, and it appears to me that based on the entirety of the record, that this is nothing more than Mr. Kirk's attempt to further delay the proceedings. And the defendant's request to have a continuance to explore a motion to withdraw the plea or for any other reason to replace his lawyer, whatever, is denied." Based on this record, there was no abuse of discretion in denying the continuance.

## DISPOSITION

The judgment is affirmed.

 

                                                _____

                                                Banke, J.

We concur:

_____

Margulies, Acting P. J.

_____

Dondero, J.